IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QFIX SYSTEMS, LLC and ANHOLT TECHNOLOGIES, INC. d/b/a QFIX, | : : : : | |
| Plaintiffs | : : | |
| v. | : : | Civil Action No. 23-cv-00077-CJB |
| KLARITY MEDICAL PRODUCTS, LLC, | : : : | JURY TRIAL DEMANDED |
| Defendant | : : | **FILED UNDER SEAL** |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE THE EXPERT REPORTS OF
<u>ALLAN F. DEGUZMAN AND EXCLUDE RELATED OPINIONS</u>**


Dated: 2/7/25

Andrew J. Koopman (DE Bar #5288)
Christopher H. Blaszkowski (DE Bar #5673)
BUCHANAN INGERSOLL & ROONEY PC
500 Delaware Avenue, Suite 720
Wilmington, DE  19801-7407
T (302) 552-4200
F (302) 552-4295
andrew.koopman@bipc.com
christopher.blaszkowski@bipc.com

*Attorneys for Plaintiffs*

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................. 1
II.     NATURE AND STAGE OF PROCEEDINGS ................................................................... 2
III.    SUMMARY OF ARGUMENT ............................................................................................ 2
IV.     STATEMENT OF FACTS ................................................................................................... 2
V.      ARGUMENT ........................................................................................................................ 4
        A.      Dr. deGuzman's Declaration and Reports Comply with Fed. R. Civ. P. 26(a) ...... 4
        B.      Dr. deGuzman's Testimony is Reliable ................................................................. 7
        C.      Dr. deGuzman is Qualified to Opine on Commercial Success ............................ 10
VI.     CONCLUSION ................................................................................................................... 13

## Table of Authorities

**Cases**

*Advanced Medical Optics, Inc. v. Alcon, Inc.*,
  2005 WL 782809 (D. Del. 2005) ............................................................................................ 7

*Atlanta Attachment Co. v. Leggett & Platt, Inc.*,
  2006 WL 8432432 (N.D. Ga. 2006) ........................................................................................ 5

*Crowley v. Chait*,
  322 F. Supp. 2d 530 (D.N.J. 2004) .......................................................................................... 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ......................................................................................................... passim

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
  714 F. Supp. 2d 535 (E.D. Pa. 2010) .................................................................................... 5, 7

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*,
  2013 WL 3216109 (D. Del. June 25, 2013) ...................................................................... 11, 13

*NetFuel, Inc. v. Cisco Sys. Inc.*,
  2020 WL 1274985 (N.D. Cal. 2020) ....................................................................................... 5

*Rambus Inc. v. Hynix Semiconductor Inc.*,
  254 F.R.D. 597 (N.D. Cal. 2008) ........................................................................................... 13

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015) ............................................................................................ 8, 9

*TQ Delta, LLC v. 2Wire, Inc.*,
  2021 WL 2685654 (D. Del. 2021) .................................................................................... passim

*XpertUniverse, Inc. v. Cisco Systems, Inc.*,
  2013 WL 865974 (D. Del. Mar. 7, 2013) .............................................................................. 11

**Statutes**

35 U.S.C. 102, 103, and 112 ...................................................................................................... 10

FED. R. CIV. P. 26(a) .......................................................................................................... passim

FED. R. EVID. 702 ................................................................................................... 2, 8, 11, 13

I. **INTRODUCTION**

Plaintiffs Qfix Systems, LLC and Anholt Technologies, Inc. d/b/a Qfix ("Plaintiffs" or "Qfix") submit this Brief in Opposition to Klarity Medical Products, LLC's ("Defendant" or "Klarity") Motion to Strike the Expert Reports of Allan F. deGuzman and Exclude Related Opinions (D.I. 157).

Defendant seeks to exclude all of Dr. deGuzman's reports by arguing, based on its mischaracterization of Dr. deGuzman's deposition testimony, that he did not prepare his own opinion. The Third Circuit requires that an expert provide "substantial input" into the preparation of an expert report.[1] The record establishes that Dr. deGuzman did just that. He spent substantial time in connection with the preparation of his reports—20-30 hours preparing his opening report alone—which included analyzing the patents, file histories, accused products, and Defendant's asserted prior art. He worked with counsel to reduce his opinions and analysis, first orally communicated and discussed with counsel, to writing, and then reviewed and substantively revised his reports as needed. His claim construction declaration, as well as his opening, rebuttal, and reply reports, reflect his thorough, independent, and reliable analysis relating to the issues of claim construction, infringement, and validity in this lawsuit. Dr. deGuzman's opinions and associated reports thus satisfy both FED. R. CIV. P. 26(a) and *Daubert*.

Beyond his opinions on infringement and validity, Dr. deGuzman has adequate expertise to testify regarding commercial success of the parties' respective products. Dr. deGuzman has decades of experience as a customer of such products, during which he evaluated and selected immobilization masks for purchase and use. His opinions are probative of the commercial value of the products at issue. Defendant's criticism of Dr. deGuzman's experience or associated

---

[1] Defendant's brief fails to cite this Third Circuit standard at all, let alone any case from this District excluding an expert report for failure to comply with this standard.

testimony is properly addressed, if at all, through cross examination—not through exclusion under FED. R. EVID. 702.  For the reasons below, Klarity's Motion (D.I. 157) should be denied.

## II.     NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed their Complaint for Patent Infringement (D.I. 1) on January 23, 2023, alleging infringement of U.S. Patent No. 11,364,088.  Plaintiffs filed their Amended Complaint for Patent Infringement (D.I. 42) on October 18, 2023, adding a count for infringement of the '516 Patent.  Fact and expert discovery have closed.  The Court has issued orders construing or declining to construe all terms disputed by the parties. (*See* D.I. 83, 94, and 144-149.)  Defendant filed the instant motion on January 17, 2025.

## III.    SUMMARY OF ARGUMENT

1.     Dr. deGuzman "prepared" his expert reports within the meaning of FED. R. CIV. P. 26(a) because he took part and offered substantial input in the development and drafting of the opinions contained in those reports.

2.     Dr. deGuzman's opinions are reliable and admissible pursuant to FED. R. EVID. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Defendant does not object to the methodology employed by Dr. deGuzman in analyzing the asserted prior art or the Accused Products. Instead, Defendant objects to alleged inconsistencies stemming primarily from imprecise questioning which can be addressed through cross-examination.

## IV.    STATEMENT OF FACTS

Dr. deGuzman has offered substantive infringement and validity opinions on behalf of Plaintiffs' in this case. He holds a B.S. in physics, a Ph.D. in biophysics, and undertook postdoctoral training at the Yale University School of Medicine. (Declaration of Andrew J. Koopman ("Koopman Decl."), Exhibit 1, Expert Report of Allan F. deGuzman, Ph.D. ("deGuzman Opening Rep."), ¶ 4.) He is board certified by the American Board of Radiology

since 1994, and by the State of North Carolina as an Operator and Qualified Expert in Leksell Gamma Knife since 1999. (*Id*., at ¶ 6.) He has more than thirty-seven years of relevant therapeutic radiology and industry experience. (*Id*., at ¶ 7.)

Plaintiffs retained Dr. deGuzman on or about November 2023, before the parties submitted the Joint Claim Construction Chart (D.I. 54). Dr. deGuzman first offered a declaration in connection with claim construction on December 20, 2023. (D.I. 70-1.) Despite alleging in their Brief that his claim construction analysis "infected the Court's evaluation of claim construction" (D.I. 158 at 2), Defendant did not depose Dr. deGuzman in connection with his claim construction declaration, or previously contest any opinion Dr. deGuzman raised in that declaration. Nor did Defendant rely on any expert declaration during claim construction.

Following claim construction, Dr. deGuzman submitted an Opening Report on Infringement, a Rebuttal Report on Validity, and a Reply Report on Infringement. Dr. deGuzman worked closely with counsel to prepare these reports, which he testified "were written with [his] assistance by the attorneys." (Koopman Decl., Exhibit 2, Deposition Transcript of Allan F. deGuzman, Ph.D. ("deGuzman Tr."), at 53:18-20.) In preparation to offer the opinions presented in his reports, he reviewed, *inter alia*, the asserted patents, the associated file histories, the relevant extrinsic evidence, the accused products, and the asserted prior art. (*See* deGuzman Opening Report at ¶ 15; Koopman Decl., Exhibit 3, Rebuttal Expert Report of Allan F. deGuzman, Ph.D. ("deGuzman Rebuttal Rep."), at ¶ 15.)

Following his independent review of the materials above, as well as others listed in the appendices to his reports, Dr. deGuzman discussed his opinions with counsel. After these discussions, he received a draft report from counsel reflecting those discussions. He then reviewed and edited that draft. (deGuzman Tr. at 279:8-280:5.) He spent a substantial amount of

3

time in connection with the preparation of these reports, providing the analysis and ensuring that the draft report accurately reflected that analysis and his opinions. (*Id*. at 53:25-54:5.) For example, he spent 20-30 hours preparing his opening report alone. (*Id*. at 57:5-9.)  In each report, Dr. deGuzman confirmed that the bases for the opinions set forth therein "are true and correct to the best of my knowledge and belief, including those relating to scientific issues, which I believe are true and correct to a reasonable degree of scientific certainty." (deGuzman Opening Rep. at ¶ 16; deGuzman Rebuttal Rep. at ¶ 16; Koopman Decl., Exhibit 4, Reply Expert Report of Allan F. deGuzman, Ph.D. ("deGuzman Reply Rep."), at ¶ 8.)

## V.     ARGUMENT

Dr. deGuzman's testimony satisfies both Rule 26(a) and *Daubert*. As described below, he spent significant time and resources actively preparing and revising the opinions in his reports so that they accurately reflected his independent analysis. Defendant's evidence, consisting of selective citations to Dr. deGuzman's deposition transcript, demonstrates his compliance with the "substantial input" standard required by the Third Circuit.  Defendant ignores this governing standard and mischaracterizes Dr. deGuzman's testimony. Its inadmissibility arguments are contrary to established precedent, and fall far short of discrediting Dr. deGuzman's analysis or undermining the reliability of his opinions.  These arguments should be rejected.

### A.     Dr. deGuzman's Declaration and Reports Comply with Fed. R. Civ. P. 26(a)

Rule 26(a) requires that an expert report be "prepared and signed" by the expert.  FED. R. CIV. P. 26(a)(2)(B). To determine whether a report satisfies this requirement, "courts in the Third Circuit ... focus[] on whether the expert witness offered substantial input into what was put into the report." *TQ Delta, LLC v. 2Wire, Inc.*, 2021 WL 2685654, at *3 (D. Del. 2021) (internal quotation marks omitted). "Substantial input" requires the expert to provide enough input such that the report "reflects the testimony to be given by the" expert. *In re Asbestos Prods. Liab.*

4

*Litig. (No. VI)*, 714 F. Supp. 2d 535, 542 (E.D. Pa. 2010); *Crowley v. Chait*, 322 F. Supp. 2d 530, 545 (D.N.J. 2004) (finding that the expert provided substantial input where he dictated his opinions to counsel so that counsel could compose a first draft of the report).

Defendant acknowledges that "some assistance of counsel in the preparation of expert reports may be acceptable[.]"  (D.I. 158 at 1.)  In fact, it is well-established that assistance of counsel is permitted—and even customary—in connection with preparing expert reports.  *See TQ Delta, LLC v. 2Wire, Inc.*, 2021 WL 2685654, *2–*4 (D. Del. 2021) (citing the Advisory Committee notes for Rule 26(a)(2)(B) and noting that "counsel may participate in the preparation of expert reports"); *see also In re Asbestos,* 714 F. Supp. at 542 (explaining that the substantial input standard and Rule 26(a) do not "preclude counsel from providing assistance to experts in preparing reports"). Specifically, "[h]aving the expert consult with the attorney, read and edit the attorney's draft, and affirm that it reflects his opinions is sufficient to count as 'prepared' under Rule 26 case law."  *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 2006 WL 8432432, at *5 (N.D. Ga. 2006); *see also NetFuel, Inc. v. Cisco Sys. Inc.*, 2020 WL 1274985, at *3 (N.D. Cal. 2020) (explaining "the reality" that "attorneys may be involved in the preparation of an expert report").

Dr. deGuzman's declaration and reports comply with FED. R. CIV. P. 26(a) because they embody—and were drafted with—his active, substantial, and substantive input. He testified under oath that each was "written with [his] assistance by the attorneys." (deGuzman Tr. at 53:18-20.) The process involved collaborative discussions with counsel, after which he would receive a draft report reflecting those discussions. He then reviewed and edited the draft. (*Id*. at 279:8-280:5.) He spent a substantial amount of time in connection with the preparation of these reports, providing the analysis and ensuring that the draft report accurately reflected that analysis

and his opinions. (*Id*. at 53:25-54:5.) This included confirming the veracity of statements and editing of statements that he believed required adjustment. (*Id*.) This also included adding in sections of the reports on his own; in others, he reworded the drafts. (*Id*. at 56:2-17.) Dr. deGuzman spent many hours directing the preparation of his reports, including 20-30 hours preparing just his opening report. (*Id*. at 57:5-9.) The analysis set forth in the reports—the entirety of which he read before signing—was that of Dr. deGuzman. (*Id*. at 53:25-54:5.) Finally, Dr. deGuzman attested that each of his reports are "true and correct to the best of [his] knowledge and belief …." (deGuzman Opening Rep. at ¶ 16.)  Defendant's assertion that Dr. deGuzman did not read every word in every document listed in his reports is misguided.  He considered the documents (deGuzman Tr. at 53:9-13), reviewed pertinent portions of the documents (*id.* at 61:18-62:2), and discussed those documents with counsel (*id.* at 62:3-5).

Defendant fails to cite any case from this District that categorically excluded expert testimony under Rule 26(a). This is because "[c]ategorical exclusion of expert testimony" under Rule 26(a) "requires commensurately compelling evidence that the expert effectively signed his name onto the report without looking at its contents." *TQ Delta*, 2021 WL 2685654, at *3. Defendant does not even try to make such a showing, let alone address the "substantial input" standard. Nor could Defendant have hoped to do so, as Dr. deGuzman's testimony confirms that he did much more than simply sign his name to the challenged reports.

The *TQ Delta* case demonstrates that Defendant's argument is contrary to the established law in this District. As here, the Court in *TQ Delta* considered a motion to exclude an entire expert report on the ground that the expert allegedly had not drafted the report himself. 2021 WL 2685654 at *2. There, the challenger argued that the expert had an "inability to recognize statements quoted directly from 'his' expert reports," which to the challenger "indicate[d] that he

6

did not prepare the reports ….” *Id*. The Court rejected this argument, finding that the challenger had failed to show that counsel "wrote the report without substantive input from [the expert]." In denying the motion, the Court cited *In re Asbestos* where "despite counsel writing the entire supplemental expert report, the court upheld the report as valid because the expert 'testified at deposition that while he did not write his supplemental report, he agreed with the content of the report.'" *Id*. at *3. Categorical exclusion was not warranted because the challenger provided no evidence that "counsel wrote the expert report without substantive input from [the expert]." *Id*.

A similar exclusion motion was denied in *Advanced Medical Optics, Inc. v. Alcon, Inc.*, 2005 WL 782809 (D. Del. 2005), where the expert testified at his deposition that he and counsel "collectively" drafted his report, and that they collaborated in creating "multiple revisions." *Id.* at *9-10. Based on this testimony, the Court rejected the very same argument advanced here by Defendant, that the expert's opinions were "pulled directly from litigation positions crafted by ... attorneys, as opposed to conclusions drawn from his own independent assessment of the claims at issue." *Id.*

Like the experts in *TQ Delta* and *Advanced Medical*, Dr. deGuzman provided substantial input in the preparation of his reports by discussing the issues and his analyses with counsel and, upon receiving drafts reflecting those discussions, reviewing and revising those drafts to ensure their accuracy. His reports satisfy the requirements of FED. R. CIV. P. 26(a).

### B. Dr. deGuzman's Testimony is Reliable

In further support of its erroneous Rule 26 argument, Defendant quotes snippets of deposition testimony in an effort to show that Dr. deGuzman could not have authored his opinions. These criticisms at best demonstrate Defendant's disagreement with Dr. deGuzman's opinions. At best, what Defendant paints as issues with credibility are instead factual disputes. They do not support inadmissibility.

7

Expert testimony is admissible if it will assist the trier of fact, provided it is the product of reliable methods applied reliably to sufficient facts or data. FED R. EVID. 702; *Daubert*, 509 U.S. at 591 (testimony must "aid the jury in resolving a factual dispute"). The "rejection of expert testimony is the exception rather than the rule." Adv. Comm. Note to 2000 Amendment to FED. R. EVID. 702.

"[A] district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case*." Summit 6, LLC v. Samsung Elecs. Co*., 802 F.3d 1283, 1295 (Fed. Cir. 2015). "But the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Id*. at 1296. "Indeed, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id*. (citing *Daubert*, 509 U.S. at 596). Thus, "where the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder." *Id*.

Defendant's collateral Rule 26-based *Daubert* arguments fail.  (D.I. 158 at 16.) Defendant focuses on ambiguous testimony by Dr. deGuzman regarding his alleged use of Qfix products back in the 1990s, despite his repeated testimony that he "can't say for certain" and "really do[es] not recall things really well" with respect to his use of Qfix products decades ago. (deGuzman Tr. at p. 71:16-21.) This entire line of questioning was based on a misleading suggestion by Defendant's counsel that Dr. deGuzman worked with a *specific* Qfix mask, i.e., the patented Encompass® masks at issue in this lawsuit, during his time at Wake Forest in the

8

1990s. (deGuzman Tr. At 29:21-25.) The record in this case unequivocally confirms that the patented Qfix mask was not in use or on sale decades before the critical date of the asserted patents, as Defendant well knows. (Koopman Decl., Exhibit 22, Deposition Transcript of Daniel Coppens ("Coppens Tr."), at 64:6-21 (testifying that development for the patented Encompass® System began in 2013 and that Plaintiffs did not sell any SRS masks prior to that development); Exhibit 23, QFIX-0148970 (financial record indicating that December 2014 is the earliest sale of the patented Encompass® System).)

Defendant again fails to cite *any* case which would support the exclusion of the entirety of Dr. deGuzman's reports based on such ambiguous deposition testimony. Confirming that this is not a *Daubert* issue, Defendant acknowledges at the end of the lone paragraph dedicated to this section that it questions Dr. deGuzman's "credibility" and could employ "cross-examination" to address the scattered, alleged inconsistencies from Dr. deGuzman's deposition. (D.I. 158 at 16.) As in *TQ Delta*, "[n]one of Defendant's arguments, however, question the 'scientific validity' of the procedures or tests underlying [Dr. deGuzman's] opinions; rather, they address whether [Dr. deGuzman] is a credible witness. But the 'question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.'" *TQ Delta, LLC*, 2021 WL 2685654, at *3 (citing *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). To the extent that Defendant contends Dr. deGuzman's "credibility, data, or factual assumptions have flaws, these alleged flaws go to the weight of the evidence, not to its admissibility." *Summit 6*, 802 F.3d at 1299.

Defendant's remaining Rule 26(a) arguments (D.I. 158 at 5-7, 13-14) regarding reliability are equally unavailing. Dr. deGuzman's testimony is reliable for the reasons stated above, i.e., he played an active role in the preparation of his reports and the theories underlying those reports.

Moreover, Defendant's complaints about Dr. deGuzman's testimony reflect disagreement with his opinions, and are points that at most center on credibility and weight, not admissibility.

Defendant cites case law using such imagery as "putting words in [the expert's] mouth," "highly qualified puppet," "alter ego," and "party's lawyer's avatar" which, if accepted at face value, would compel the exclusion of its own expert, Dr. Jahraus. Dr. Jahraus has offered opinions on invalidity that contain little more than prepackaged theories devised by counsel before his involvement in the case, and which he merely repeats in his invalidity reports.[2]

Dr. deGuzman's opinions as set forth in his declaration and reports are admissible. Defendant falls far short of supplying the "compelling evidence" required to support the extreme remedy of total exclusion.

### C. Dr. deGuzman is Qualified to Opine on Commercial Success

Klarity is incorrect in suggesting that Dr. deGuzman does not have sufficient experience to testify regarding factors supporting commercial success. For example, in his role as Chief Physicist, he had the responsibility to select and purchase masks for use by the hospital at which he worked. (deGuzman Rebuttal Rep. at ¶ 32; *see also* deGuzman Tr. at 15:25-16:4 (testifying that he was "instrumental in making [mask purchasing] decisions.").) When selecting masks for use by the hospital, he considered "features relevant to the treatment modalities offered and

---

[2] While Plaintiffs retained Dr. deGuzman on or about November 2023, i.e., prior to engaging in the claim construction process, Defendant did not engage Dr. Jahraus until *well after* claim construction, and *after* serving Defendant's Initial Invalidity Contentions on October 11, 2023 [D.I. 39] and Defendant's First Amended and Supplemental Initial Invalidity Contentions on November 17, 2023 [D.I. 51]. Dr. Jahraus had not discussed the case with anyone prior to his engagement in the "summer" of 2024, and thus had not been consulted on the attorney analyses under 35 U.S.C. 102, 103, and 112 set forth in those contentions which then appeared in his invalidity reports. (Koopman Decl., Exhibit 5, Deposition Transcript of Christopher D. Jahraus, at 69:1-15 (testifying that he was first approached by Defendant two to four weeks before he executed his written assurance on July 3, 2024); 70:3-7 (testifying he was not aware of the lawsuit before being approached in or about June, 2024).)

10

considered the costs." (*Id.*) In doing so, Dr. deGuzman performed exactly the same analysis as the rest of the market with respect to the relevant masks.

Dr. deGuzman's "qualifications meet the liberal standard for 'specialized knowledge' under Federal Rule of Evidence 702." *INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, 2013 WL 3216109, at *4 (D. Del. June 25, 2013) (permitting polymer chemist who "is not an economist or formally trained in polymer resin sales" to offer commercial success opinions based on his experience in the polymer industry). Klarity's sole case from this District does not establish Dr. deGuzman lacks some qualification necessary to reliably opine on commercial success. In *XpertUniverse, Inc. v. Cisco Systems, Inc.*, the excluded expert "delegated the marketing and sales component" of his work and offered no showing of "expertise in marketing or business." 2013 WL 865974, at *3 (D. Del. Mar. 7, 2013). Dr. deGuzman's perspective on purchasing masks for large market entities provides him with the specialized knowledge appropriate to render a commercial success opinion.

Dr. deGuzman relied on Plaintiffs' damages expert (Mr. Gutzler) for an explanation of the financial charts included in his report (reproduced from Mr. Gutzler's Report).[3] (deGuzman Rebuttal Rep. at ¶ 397.) This is entirely appropriate under the laws of this District. Indeed, "experts may use a mix of objective data and subjective analysis from another expert to ... create an admissible report, and an expert's knowledge of specific facts regarding the incident—or lack

---

[3] Defendant's complaint in FN. 1 regarding the timing of the production of the documents underlying these charts is confusing, especially because Defendant elected not to depose either of Plaintiffs': (1) damages expert, Mr. Gutzler (whose report cites to and analyzes QFIX-0150776); or (2) 30(b)(6) designee (Mr. Dee Jones) for any financial topics. (Koopman Decl., Exhibit 24, Opening Report of Gary Gutzler, ¶ 43; Koopman Decl., Exhibit 25, Email dated July 31, 2024.) Defendant could have questioned Mr. Gutzler on this information, but elected not to do so. Separately, Defendant agreed not to challenge the timeliness of the production of this information in exchange for Plaintiffs waiving a similar challenge to Defendant's untimely supplemental damages expert report based on previously undisclosed cost information.

thereof—go[es] to the weight accorded to [that expert's] report and testimony, rather than its admissibility." *Helios Software, LLC v. Awareness Techs., Inc.*, No. CV 11-1259-LPS, 2015 WL 12806482, at *2 (D. Del. Apr. 13, 2015) (denying motion to exclude technical expert's opinions because "[the first expert] can be cross—examined about the extent of his own independent analysis, the risk of prejudice and confusion stemming from the use of [the second expert's] opinions does not outweigh the relevance of potentially invalidating prior art under Rule 703.").

Defendant suggests that Dr. deGuzman "has no basis for the opinion in his report stating 'without these benefits of the patented invention, a patient immobilization device would not be able to compete in the SRS market.' (D.I. 158, at 15 (citing D.I. 159-1, Ex. D, ¶ 401.)) This is incorrect. In addition to his discussions with Mr. Gutzler, Dr. deGuzman also considered and relied on Klarity's own documents describing the "potential demand" for the Encompass® mask, where Ellen Devault of Klarity responded "[t]here are a lot of places that use this system." (D.I 159-1, Ex. D, at ¶ 398.) In one particularly probative email considered by Dr. deGuzman, Klarity's CEO, Peter Larson, stated concerning the patented Qfix Encompass® mask that "Qfix has made an excellent design that we should use as a model. I have seen this design being used by top therapists at OSU. They say it is the best design ever made. I agree." (*Id.*) Dr. deGuzman also considered the deposition testimony of Mr. Larson in which he admitted that customers have a strong preference for the accused products and that customers have come to depend on the patented features in that "they've been taught by the Qfix system to expect individual adjustments." (*Id.* at ¶ 401.) After considering this evidence, Dr. deGuzman established a nexus between this commercial success and the claimed invention. (*Id.* at ¶ 400.)

Dr. deGuzman has developed expertise and understanding of customer and market needs during his years of responsibility for selecting relevant medical devices for purchase and use by

12

large institutional entities. *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 604 (N.D. Cal. 2008) ("Rule 702 [] recognizes that people develop expertise in many ways and permits an expert to testify based on "knowledge, skill, experience, training, or education"). He is qualified under Rule 702 to testify based on this "specialized knowledge." *INVISTA*, 2013 WL 3216109, at *4. With respect to the challenges raised by Klarity regarding Dr. deGuzman's opinions on commercial success, "such disagreements are more properly reserved for cross-examination." *Id.*

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendant's Motion to Strike the Expert Reports of Allan F. deGuzman and Exclude Related Opinions.

                                                                 Respectfully submitted,

Dated: 2/7/25                         */s/Andrew J. Koopman*
                                      Andrew J. Koopman (DE Bar #5288)
                                      Christopher H. Blaszkowski (DE Bar #5673)
                                      BUCHANAN INGERSOLL & ROONEY PC
                                      500 Delaware Avenue, Suite 720
                                      Wilmington, DE 19801-7407
                                      T (302) 552-4200
                                      F (302) 552-4295

                                      andrew.koopman@bipc.com
                                      christopher.blaszkowski@bipc.com

                                      *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 7, 2025, upon the following by electronic mail:

Michael Flynn
Travis J. Murray
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Michael J. Gallagher
TAYLOR DYKEMA, LLC
490 City Park Avenue, Suite B
Columbus, OH 43215

                                                  */s/ Andrew J. Koopman*
                                                  Andrew J. Koopman